IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION



SOUTHERN DISTRICT OF MISSISSIPPI
FILED
FEB 27 2017
BY_____ ARTHUR JOHNSTON DEPUTY

**EVIN GRISWOLD,**                                                               **PLAINTIFF**

v.                                                                  Civ. No. 1:17cv50 HSO-JCG

**PICAYUNE SCHOOL DISTRICT; PICAYUNE SCHOOL
DISTRICT BOARD OF TRUSTEES; FRANK FORD
(official & individual capacity);
DEAN SHAW (official & individual capacity);**                     **DEFENDANTS**
**BRENT HARRELL (individual capacity);
PATRICK RUTHERFORD (individual capacity);**                       **(JURY TRIAL**
**JOHN DOES 1-10**                                                 **DEMANDED)**

## COMPLAINT

At a professional development course, teacher Evin Griswold was called a "bitch" by a co-worker. Rather than disciplining the teacher that insulted Griswold, the school district instead accused Griswold of rudeness and fired her. Counsel for the district reasoned, in a school board meeting, that "if she was called a bitch, she must have been acting like a bitch." This reasoning is specious and pretextual. The true reason for Griswold's termination was that Principal Patrick Rutherford was embarrassed and offended that Griswold had requested reasonable accommodations for her disability at the professional development course, and opposed discrimination and unfair treatment. His actions were motivated by her disability, her sex, and retaliation for her statutorily and constitutionally protected activity. In support thereof, COMES NOW THE PLAINTIFF, by and through her attorney, and alleges as follows:

## JURISDICTION, VENUE, JURY TRIAL

1. Jurisdiction is proper in this court under 28 U.S.C. § 1331 because this claim arises under numerous federal laws, including the Rehabilitation Act, the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1983, and the United States Constitution.

2. Venue is proper in this court under 28 U.S.C. § 1391 because the school district and all work at issue is located in Picayune, Mississippi.

3. Plaintiff hereby demands trial by jury on all issues so triable.

## ADMINISTRATIVE EXHAUSTION, NOTICE, LIMITATIONS

4. Plaintiff has utilized all required procedures for pursuing these grievances against the Defendants concerning the subject matter of this action.

5. The unlawful actions in this case occurred primarily during the period from on or about June 2016 through October 2016.

6. On or about November 18, 2016, Plaintiff filed a charge with the Equal Employment Opportunity Commission describing her claims. (Composite Exhibit A.)[1]

7. This charge was filed within 180 days of the events at issue in this matter, and was therefore timely.

8. After an investigation, the Commission gave notice of the right to sue on this

---

1 All exhibits are incorporated by reference as if fully set forth herein.

claim, which was dated by the EEOC as though it had been sent on January 27, 2017, but was postmarked February 1, 2017. (Exhibit A)[2]

9. The present Complaint is timely filed within 90 days of receipt of this notice.

10. This satisfies the timeliness and administrative exhaustion requirements of Title VII, the Rehabilitation Act and the Americans with Disabilities Act.

11. The various notices in the grievance and EEOC process in this matter also satisfy the requirements of Miss. Code § 11-46-11 to the extent applicable here.

**PARTIES**

12. Plaintiff Evin Griswold – formerly known as Evin Lang – is an adult resident of Mississippi and a former employee of Defendant Picayune School District.

13. Defendant Picayune School District is a political subdivision of the state organized under the Mississippi Uniform School Law, Miss. Code § 37-6-5, and responsible for providing education to children of Picayune, Mississippi.

14. Defendant Picayune School District Board of Trustees is the five-member governing body of the school district, organized under Miss. Code § 37-6-7.

15. Defendant Frank Ford is the Chair of the school board, and is sued in his official capacity and also in his individual capacity.

16. Defendant Dean Shaw is the Superintendent of the school district, and is sued in

---

2 The facts concerning EEOC mail practice in this case are noted, not because they have relevance to timeliness in the present matter, but simply to make a record for the Court of the practices of the EEOC which undercut the three-day presumption of receipt in *Jenkins v. City of San Antonio Fire Dept.*, 784 F. 3d 263 (5th Cir. 2015).

his official capacity and also in his individual capacity.

17. Defendant Brent Harrell is Assistant Superintendent of the school district, and is sued in his individual capacity.

18. Defendant Patrick Rutherford is the Principal of Nicholson Elementary School in the district, and is sued in his individual capacity.

19. Defendants John Does 1 to 10 are persons or entities unknown who are responsible, in whole or in part, directly or indirectly, in their individual or official capacities, for the events complained of herein, or closely related events. As the identity of such persons becomes known, pleadings will be amended to add them by name.

## PLAINTIFF'S MEDICAL HISTORY

20. Plaintiff was in an accident some decades ago, which caused certain permanent injuries to her face and brain.

21. Plaintiff now suffers from epilepsy caused by scar tissue in the brain.

22. Plaintiff's epilepsy can cause dangerous grand mal seizures if uncontrolled by potent neurological medication.

23. This medication can have significant negative side effects on mood, focus, and resiliency to stress and emotional distress.

24. Even when controlled by medication, Plaintiff can suffer from painful and unpleasant epileptic episodes called auras.

25. Auras can be also triggered by stress and emotional distress.

26. In addition, partially successful reconstructive surgery has left Plaintiff with an asymmetrical appearance, and facial affect display which gives the mistaken impression of being permanently angry or upset.

27. Defendant Rutherford was aware of Plaintiff's disability no later than March of 2016.

28. Specifically, Plaintiff had informed Rutherford of needing to miss work for neurologist appointments.

29. Plaintiff had also corresponded with Rutherford about difficulties she was having with changes in her medication.

30. Defendant Howie was also aware of Plaintiff's disability at this time, because she too was informed of it by Plaintiff.

## PLAINTIFF'S WORK HISTORY

31. Plaintiff graduated from The University of Southern Mississippi with a teaching degree in 2014.

32. She began working as a certified teacher for Nicholson Elementary in the Picayune School District in the 2014/2015 school year.

33. Her contract was renewed for the 2015/2016 school year.

34. It was renewed again for the 2016/2017 school year.

35. Plaintiff's performance evaluations and other assessments were strong from the

beginning of her employment until June 2016.

36. Specifically, teachers were assessed on 20 standards of performance: number 17 concerns "continuous professional development," number 18 concerns "professionalism and high ethical standards," and number 20 concerns "collaborat[ing] with colleagues and [being] an active member of a professional learning community in the school."

37. On each standard, teachers are awarded a score between one and four.

38. On every appraisal, Plaintiff received a "3" on standards 17, 18, and 20.

39. A level "3" is defined as "**Effective:** Level 3 is the expectation for all teachers. <u>**Rating at this level indicates that the teacher's performance consistently meets expectations.**</u>" (Emphasis in original)

40. Plaintiff's performance appraisals contain no evidence of rudeness or unprofessionalism toward anyone, including colleagues and administrators.

41. Plaintiff's overall performance score in 2014 was a 3.12. Her overall performance score in 2015 was a 3.21.

42. Prior to June 2016, the Plaintiff's employment file contained no record of any discipline.

## PROTECTED ACTIVITY

43. Requesting reasonable accommodation is statutorily protected activity, and it is a violation of the statute to retaliate for such activity. Complaining of disability

discrimination is also statutorily protected activity, and it is a violation of the statute to retaliate for such activity.

44. In June 2016, Ms. Griswold attended a two-week professional development seminar at Mississippi State with a number of colleagues.

45. Ms. Griswold found the full-time seminar environment stressful.

46. She had also recently changed medication a number of times in an effort to better balance control of her epilepsy with negative side effects.

47. Then, while at the seminar, Ms. Griswold received a text message from her then-husband asking for a divorce.

48. As a result of these factors, Ms. Griswold found herself experiencing a series of deeply unpleasant auras and feeling poorly.

49. Ms. Griswold tried to contact Rutherford and Howie in the first week of the seminar in order to ask permission to leave the seminar, but they did not return her efforts, and she was unable to reach them.

50. Around the same time, Ms. Griswold also asked the seminar's manager for leave to go back home, but was told that she should try to stick it out.

51. These were requests for reasonable accommodation of her disability.

52. Ms. Griswold continued participating, but she cried each night in her dorm room.

53. Ms. Griswold was also bothered by others in the program, who asked her

repeatedly why she looked so angry or upset, and whether she was okay.

54. Ms. Griswold is also alleged by the school district to have had a number of disagreements with others during this time. Another Nicholson Elementary teacher, Ms. Berger, alleged that, when doing a triangle exercise, Ms. Griswold disagreed with her team about how the exercise was to be done, and was corrected by the instructor. Ms. Berger also alleged that, during another exercise, Ms. Griswold said to Ms. Berger "we don't have to do everything your way."

55. Ms. Berger also admitted under oath to the following incident: "[W]hat happened one night was [a coworker] called my roommate, and she asked us to go invite Ms. Lang [now Griswold] to go out to eat with the rest of the group. Now, I don't know who was in the group at the time, and so I went to her door; and we knocked on it. And she came to the door, she was crying, and she said, 'Can I ask you something and be truthful,' and I said, 'Okay.' My -- actually, the teacher next to me said, 'Ask her. She'll tell you the truth.' So she asked me if I thought or we thought she was a bitch, and I said, 'Yes, you are.' And then I said, 'The way you talk to me at that class that we had been in,' I said, 'Yeah, you're a bitch,' and I just turned around and walked out."

56. In the meantime, Ms. Griswold went to Brett Harvey, the Director of Title IX/EEO Programs at MSU.

57. She told him about her medical condition, and said that she felt that she was

being discriminated against by others in the program and the program administration, and that she could not stand it any more. She wanted others to "leave me alone."

58. This too was a request for reasonable accommodation, as well as a protected claim of disability discrimination.

59. Thereafter, an MSU staff member contacted Defendant Rutherford and discussed Ms. Griswold's protected activity, in addition to alleging that she had an "unprofessional" manner and alleging that someone had said that Ms. Griswold had called someone a "bitch."

60. A little later, back at Nicholson Elementary, Ms. Berger provided testimony alleging the following interaction: "We were working on our rooms; she [Plaintiff] came into the lab because Ms. Lynn who runs the lab was in there, and she was calling Ms. Lang [now Griswold] and telling her, you know, how beautiful she looked and she looked really good.· And she said something behind me, but I wasn't sure what it was.· It was so low.· But when she passed me and we were sitting across the table, she tells -- she doesn't look at me; she looked at Ms. Lynn.· She said, 'People here take my direct talking or whatever as being rude.'· And I told her, 'Yes, we do.'· And I got up, and I walked away. " Ms. Berger then complained to the Principal, Mr. Rutherford.

## DEFENDANTS' REACTION

61. The Principal, Mr. Rutherford, denied under oath ever learning of Ms. Griswold's protected activity in complaining to the MSU EEO office.

62. However, Assistant Principal Howie admitted the opposite under oath, stating that Mr. Rutherford had said to Ms. Griswold "I can't believe that you would go and make a complaint."

63. Mr. Rutherford admitted that he was "embarrassed" by events at MSU, and that this was his motivation for disciplining Ms. Griswold.

64. In disciplining Ms. Griswold, Mr. Rutherford consulted with his boss, Mr. Harrell, and issued a "formal notice" to place in Ms. Griswold's file.

65. This "formal notice" stated two allegations of misconduct. The first was being allegedly "confrontational," "hostile," "disrespectful," "demeaning to presenters," and "argumentative" at the MSU program, which it alleged "was a clear violation of Standard 1 and Standard 5" of the teacher code of ethics. The second was that "On November 3, 2014, Mrs. Evin Lang [now Ms. Griswold] was arrested by the Forrest County Sheriff's Office and charged with public profanity."

66. Charges were dismissed in the 2014 incident after Ms. Griswold correctly asserted that her arrest and charge were unconstitutional.

67. Ms. Griswold brought this to the attention of Mr. Rutherford, Mr. Harrell, and the Superintendent, Mr. Dean Shaw. She correctly asserted that it was unlawful

for her government employer to rely on an unconstitutional arrest in disciplining her. She also denied violating any ethical standards of conduct at the MSU program.

68. The administration was upset that she was defending herself.

69. Ms. Griswold recorded a meeting – which meeting Mr. Rutherford testified never occurred – in which Mr. Rutherford, in a loud and argumentative tone, excoriated Ms. Griswold for defending herself, and accused her of being argumentative.

70. Thereafter Mr. Rutherford recommended that the school district terminate Ms. Griswold, which recommendation the school district accepted.

71. The termination recited only Ms. Griswold's alleged unprofessionalism, not her arrest.

72. However, the termination alleged additional acts of unprofessionalism during the 2015-2016 school year, which allegations had never been the subject of any prior discipline or conversation with Ms. Griswold.

73. Ms. Howie admitted that she identified these allegations only when she was helping prepare Ms. Griswold's termination, and did so only in an effort to further support the termination

74. Mr. Rutherford did not discipline or terminate Ms. Berger for calling Ms. Griswold a "bitch" at the MSU seminar.

75. At a hearing on the matter, Ms. Griswold introduced evidence showing that her termination was unlawful.

76. This evidence was presented to the School Board, which was therefore aware of all facts stated herein.

77. At an oral presentation directly to the School Board, the Board was reminded of Ms. Griswold's disability and its role here, of her protected activity and its role here, and of Ms. Berger's testimony and the disparate treatment by the district.

78. Counsel for the district then argued to the Board that Ms. Griswold should be fired. He acknowledged that Ms. Berger was not fired for her misconduct, but argued that it was Ms. Griswold's own fault that Ms. Berger called her a bitch: "If she was called a bitch, she must have been acting like a bitch."

79. The Board ratified the termination.

## CAUSES OF ACTION

### COUNT 1: Sex Discrimination

80. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

81. Plaintiff is an employee protected Title VII of the Civil Rights Act of 1964.

82. Plaintiff is a person as that term is used in the due process and equal protection clauses of the Fourteenth Amendment of the U.S. Constitution.

83. Title VII prohibits the defendants from discrimination against an employee

which is motivated by her sex.

84. The Fourteenth Amendment prohibits the defendants from discriminating against any person because of her sex.

85. Defendants engaged in unlawful sex discrimination against Plaintiff.

86. Defendants excused and ratified the use of sexist slurs like "bitch" against the Plaintiff, and specifically relied on them as proof that she was, in fact, a "bitch."

87. Defendants' allegation that Plaintiff was "argumentative" or "rude" in defending herself against their unlawful disciplinary efforts was based in part on stereotypes concerning the proper demeanor of women, which stereotypes do not apply to men.

88. Plaintiff's manner was no more "argumentative" than Defendant Rutherford's manner in a disciplinary meeting, and Plaintiff alone was subject to discipline therefore.

89. In so doing, Defendants violated Title VII and the Fourteenth Amendment.

90. Plaintiff is entitled to all lawful remedies available under Title VII and 42 U.S.C. § 1983 for such discrimination, including back wages, front pay or reinstatement, injunctive relief, notice to employees, compensatory damages, punitive damages, interest as applicable, attorney's fees and costs, and such other legal and equitable relief as may be proper.

## **COUNT 2: Failure to Accommodate & Disability Discrimination**

91. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

92. Plaintiff has a medical condition which, if untreated, can substantially interfere with major life activities.

93. Plaintiff is disabled as defined under the Americans with Disabilities Act and the Rehabilitation Act.

94. Defendants have an obligation under these laws to give reasonable accommodations to those with disabilities.

95. Defendants have an obligation to engage in an interactive process with such persons to determine what, if any, accommodations may be reasonable and necessary.

96. Plaintiff requested reasonable accommodations which were not granted.

97. Defendants did not engage in an interactive process with Plaintiff.

98. Defendants also intentionally discriminated against Plaintiff based on her disability.

99. Plaintiffs seek the full remedies provided by the relevant statutes, including back wages, front pay or reinstatement, injunctive relief, notice to employees, compensatory damages, punitive damages, interest as applicable, attorney's fees and costs, and such other legal and equitable relief as may be proper.

## COUNT 3: Discipline Based on Unlawful Arrest

100. Plaintiffs incorporate all allegations set forth in all other sections of this complaint.

101. Plaintiff is a person protected by the First and Fourteenth Amendments of the U.S. Constitution.

102. The Constitution prohibits Defendants from discriminating against a person for protected speech, or from denying her due process of law.

103. Defendants disciplined Plaintiff in her employment because she was unconstitutionally arrested.

104. Plaintiff seeks the full remedies provided by the law, including including back wages, front pay or reinstatement, injunctive relief, notice to employees, compensatory damages, punitive damages, interest as applicable, attorney's fees and costs, and such other legal and equitable relief as may be proper.

## COUNT 4: Unlawful Retaliation

105. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

106. Plaintiff was disciplined by Defendants because of her statutorily and constitutionally protected activity.

107. Among other things, Defendants disciplined Plaintiff because she engaged in activity protected by Title VII and the Americans with Disabilities Act and the

Rehabilitiation Act while at the professional development seminar at MSU.

108.  In addition, Defendants disciplined Plaintiff because she opposed the Defendants' unlawful efforts to discipline her.

109.  Plaintiff seeks the full remedies available under the relevant laws, including , including including back wages, front pay or reinstatement, injunctive relief, notice to employees, compensatory damages, punitive damages, interest as applicable, attorney's fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief requested above, and for all other legal and equitable relief which may be available against any Defendant, in their official or individual capacities, as outlined above. Plaintiff prays for judgment against Defendants as follows:

a. Find that the actions of Defendants described herein violate the law as alleged;

b. Enter judgment against Defendants;

c. Award remedies in an amount sufficient to compensate Plaintiff for the harm suffered;

d. Award back wages;

e. Award either front pay or reinstatement, as appropriate;

f. Enter an injunction curing the violations alleged herein, and prohibiting any future similar violations;

g. Award compensatory damages for emotional distress and any other non-pecuniary harms flowing from the actions alleged herein;

h. Award any consequential damages and any other pecuniary harms flowing from the unlawful acts complained of herein;

i. Award punitive damages against such Defendants which are responsible for the unlawful acts complained of herein, and are not immune from such liability;

j. Require posting of a notice to all employees regarding the violations found by this court, and notifying such employees of the order entered proscribing any future similar violations;

k. Award interest, costs, and attorney's fees; and

l. Award all other relief available under any law cited herein, or otherwise.

The foregoing Complaint is respectfully submitted on behalf of Plaintiff by and through counsel:

_/s/ Joel Dillard_ Date: 2-21-2017

Joel Dillard
JOEL F. DILLARD, PA
775 N. Congress St.
Jackson, MS 39202
Ph: 601-487-7369
Email: joel@joeldillard.com
M.S. Bar No. 104202
*Counsel for Plaintiff*